**RECORD NO. 15-1330**

In The

# United States Court Of Appeals
# For The Fourth Circuit

# JAK PRODUCTIONS, INC.;
# GROUP CONSULTANTS, INC.,

*Plaintiffs - Appellants,*

v.

# ROBERT BAYER,

*Defendant - Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

————————

## BRIEF OF APPELLEE

————————

Michael B. Hissam
Isaac R. Forman
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555

*Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. ___15-1330___       Caption: _JAK Productions, Inc.; Group Consultants, Inc. v. Robert Bayer_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Robert Bayer_____
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                        ☐YES ☑NO
         If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐YES ☑NO
         If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Michael B. Hissam _____     Date: _____ 4/15/15 _____

Counsel for: Robert Bayer _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ April 15, 2015 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Richard M. Wallace
Littler Mendelson, P.C.
Suncrest Center
1085 Van Voorhis Road, Suite 200
Morgantown, WV 26505

David J. Carr
Paul C. Sweeney
Justin P. Spack
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200

/s/ Michael B. Hissam _____                    _____ 4/15/15 _____
(signature)                                                                          (date)

# TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ................................................................... 1

STATEMENT OF THE CASE ............................................................... 1

SUMMARY OF ARGUMENT ............................................................... 5

ARGUMENT ........................................................................................ 6

    Standard of Review ....................................................................... 6

I.    The 30-Mile Restrictive Covenant Is Unreasonable On Its Face ......... 7

    a.    The district court correctly found the covenant to be facially unreasonable .............................................................. 7

    b.    JAK has no legitimate protectable interest in restricting recruitment ............................................................................. 10

II.    Appellants' claim for injunctive relief is not supported by the record .................................................................................................. 12

    a.    Appellants are not likely to succeed on the merits ................. 13

    b.    Appellants cannot demonstrate irreparable harm ................... 14

    c.    The balance of equities favors affirmance or – at a minimum – remand ................................................................ 15

    d.    The public interest does not support an injunction ................. 16

i

CONCLUSION ....................................................................................................16

STATEMENT REGARDING ORAL ARGUMENT ............................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

PAGE(S):

<u>CASES</u>:

*Blum v. Bacon*,
    457 U.S. 132 (1982)....................................................................................12

*Boggs v. Friend*,
    87 S.E. 873 (W. Va. 1916) ..........................................................................7

*Centro Tepeyac v. Montgomery Cnty.*,
    722 F.3d 184 (4th Cir. 2013) ........................................................................7

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975).......................................................................................6

*Gant v. Hygeia Facilities Found., Inc.*,
    384 S.E.2d 842 (W. Va. 1989) .....................................................................8

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v.*
*Mayor & City Council of Baltimore*,
    721 F.3d 264 (4th Cir. 2013) ........................................................................6

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
    17 F.3d 691 (4th Cir. 1994) ........................................................................13

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
    575 F.3d 342 (4th Cir. 2009) ......................................................................12

*Reddy v. Cmty. Health Found. of Man*,
    298 S.E.2d 906 (W. Va. 1982) ......................................................7, 8, 10, 14

*Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*,
    984 F.2d 113 (4th Cir. 1993) ......................................................................15

*Weaver v. Ritchie*,
    478 S.E.2d 363 (W. Va. 1996) ......................................................................8

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7, 20 (2008),
    *vacated on other grounds*,
    559 U.S. 1089 (2010)................................................................12, 13, 14, 17

## STATUTES:

28 U.S.C. § 1292(a)(1).............................................................................................1

28 U.S.C. § 1331 .....................................................................................................1

28 U.S.C. § 1332 .....................................................................................................1

W. Va. Code § 51-1A *et seq.* ................................................................................13

JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of West Virginia has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332. Appellate jurisdiction for this interlocutory appeal is provided by 28 U.S.C. § 1292(a)(1).

STATEMENT OF ISSUES

1.    Whether the district court abused its discretion by refusing to preliminarily enjoin Mr. Bayer from working at his current place of employment, after concluding that a restrictive covenant in Mr. Bayer's former employment contract is unenforceable under West Virginia law.

STATEMENT OF THE CASE

Appellants JAK Productions, Inc. and Group Consultants, Inc. (hereinafter, "JAK") perform telemarketing work to fundraise for nonprofit organizations. J.A. 272. [1] Among other things, JAK's telemarketing operations consist of the staffing and operation of call centers, two of which are located in Parkersburg, West Virginia. On February 24, 2010, Appellee Robert Bayer entered into an employment contract with the Appellants. *See id*. at 255–69. That contract

_____

[1] Citations herein to "J.A. _____" refer to the contents of the Joint Appendix filed by the parties in this appeal.

1

contains several restrictive covenants which constrain Mr. Bayer's ability to compete with JAK in the event that he would resign or be terminated.  *Id.*[2]

Mr. Bayer progressed within the ranks of JAK up through his March 2014 resignation, by which time he held the position of Director of Call Center Operations.  *Id*. at 9.  In that capacity, Mr. Bayer's job duties included overseeing and managing JAK's call centers in Parkersburg and Fairmont, West Virginia, and Portsmouth, Ohio.  *Id*. at 10.

Around March 17, 2014, Mr. Bayer notified JAK of his intention to resign.  J.A. 115.  His last day as a JAK employee was Thursday, March 27, 2014.  *Id*. at 116.  On March 31, 2014, JAK's outside counsel sent Mr. Bayer a letter detailing contractual and common law legal obligations which, according to JAK's attorney, continued to apply to Mr. Bayer.  *Id*. at 145–46.  Mr. Bayer responded, acknowledging that he "will be in compliance with the non-compete."  *Id*. at 146.  JAK also asked Mr. Bayer to return a laptop computer that had previously been provided to him by JAK.  Mr. Bayer provided the laptop to JAK's Manager of Information Technology, Mark Wiant, and asked Mr. Wiant to remove any personal information that remained on the computer.  *Id.* at 144–45, 218.

---

[2] In the proceedings below, Mr. Bayer asserted that the restrictive covenants are not supported by adequate consideration.  Mr. Bayer does not now concede that position, but agrees that the trial court did not clearly err in finding the employment contract to be supported by adequate consideration.

Mr. Bayer commenced employment with Residential Programs, Inc. ("RPI"), a competitor of JAK, in April 2014. *Id.* at 273. JAK has been aware of that fact since at least April 10, 2014. *Id*. at 47. From April 2014 through October 20, 2014, Mr. Bayer worked from home, assisting RPI in opening a call center in Athens, Ohio. *Id.* at 274. Mr. Bayer's home is within a 30-mile radius of at least one of JAK's call centers. *Id.*

JAK filed a verified complaint on January 8, 2015, seeking to enjoin Mr. Bayer from working for RPI based on the 2010 employment agreement. Paragraph ¶8 of the 2010 employment agreement contains four subparagraphs which restrict post-employment competition: (a) Geographic Limitation; (b) Limitation on Use of Certain Information to Compete; (c) Customer Limitation; and (d) "Anti-Piracy" Limitation. *See id.* at 257–59.

Prior to the preliminary injunction hearing, Mr. Bayer agreed by stipulation to be temporarily restrained from violating subparagraph (a), and to be preliminarily enjoined from violating (c)–(d). *See id.* at 107–08. For this reason, the district court's analysis was limited to the enforceability of the Geographic Limitation. *See id.* at 278 ("Section 8.a remains as the only noncompetition section currently at issue."). Subparagraph 8.a. is therefore the only restrictive covenant at issue in this appeal. In its entirety, the disputed covenant reads as follows:

3

a.    <u>Geographic Limitation</u>.  To the fullest extent permitted by the applicable law, for a period of eighteen (18) months after the termination of employment with EMPLOYER (for any reason, including resignation), Employee, on behalf of any entity in competition with EMPLOYER (whether as a proprietor, partner, joint venture, stockholder, director, officer, trustee, principal, agent, servant, employee, consultant, or in any other capacity, hereafter referred to as "in any capacity"), may not, directly or indirectly, engage in any fund-raising or telemarketing business within a thirty (30)-mile radius of any call center of EMPLOYER for which Employee, directly or indirectly, is responsible or involved with, during the two (2) years prior to the termination of Employee's employment with EMPLOYER.  Employee understands and agrees that the term "any entity in competition with EMPLOYER" includes any business that engages in fund-raising on behalf of public safety or other civic associations, including but not limited to police and firefighter associations, and/or any business that engages in providing similar inbound and outbound telemarketing services to like clients.

J.A. 257.

Given that Mr. Bayer left JAK's employment on March 27, 2014, the restrictive covenant will expire by its own terms on September 27, 2015.[3]  The district court conducted a hearing regarding the Appellants' request for a preliminary injunction as to Section 8(a), and entered an Opinion denying that request on March 27, 2015.  *Id.* at 271–87.  The district court concluded that the Geographic Limitation is unreasonable under West Virginia law.

---

[3] Appellants' brief includes the extraordinary request that this Court, acting in the first instance, extend the term of Mr. Bayer's restrictive covenant.  *See* Appellants Br. at 26.  This request is unsupported by any reference to West Virginia law, which has never recognized the equitable extension of a restrictive employment covenant.

4

## SUMMARY OF ARGUMENT

The district court correctly concluded that the restrictive covenant contained in paragraph 8.a of Mr. Bayer's employment agreement is unreasonable under West Virginia law. The court's conclusion is buttressed by detailed factual findings specific to the telemarketing industry, and is supported by the legal authorities upon which the court relied.

Moreover, JAK's legitimate business interests are fully protected. Under West Virginia law, restrictive covenants in employment contracts may be used only to prevent unfair competition, i.e., competition which makes improper use of special information, customer goodwill, or a unique skill set acquired from the employer. Mr. Bayer has already agreed and stipulated to be bound by the covenants restricting use of trade secrets or customer information, as well as solicitation of current or former employees. Here, JAK would prohibit Mr. Bayer from having any role in his current employer's efforts to recruit among the general public. Recruiting from the public does not involve any protectable asset, and JAK has no legitimate business interest in preventing its competitor from offering higher wages to job candidates. In other words, suppressing telemarketers' wages is not a protectable interest under West Virginia law.

Finally, in this procedural posture, neither the trial court nor this Court are tasked with resolving questions about the enforceability of the disputed restrictive

5

covenant. Instead, this interlocutory appeal is limited to a determination of whether the trial judge abused his discretion in denying the Appellants' request for injunctive relief. Based upon a review of the record, it is clear that the district court applied the proper legal standard and made no clearly erroneous factual findings. The court properly exercised its discretion in so doing; the denial of Appellants' request for injunctive relief must therefore be affirmed.

Alternatively, the matter should be remanded for further proceedings in the district court, or this novel use of a restrictive covenant (to restrict recruiting from the general public) should be certified as a question for the Supreme Court of Appeals of West Virginia.

ARGUMENT

Standard of Review

"[W]here a preliminary injunction is under an interlocutory examination, determining whether the district court abused its discretion 'is the extent of [the] appellate inquiry.'" *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 290 (4th Cir. 2013) (en banc) (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 934 (1975)).

So long as the district court "applied a correct preliminary injunction standard, made no clearly erroneous findings of material fact, and demonstrated a firm grasp of the legal principles pertinent to the underlying dispute," no abuse of

discretion has occurred. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 192 (4th Cir. 2013) (en banc).

## I.    The 30-Mile Restrictive Covenant Is Unreasonable On Its Face

### a.    The district court correctly found the covenant to be facially unreasonable

"[C]ontracts which are calculated to rob one of his right to earn his daily bread, or to impoverish him, and cause him or his family to become a charge upon the public charities, or to deprive the public of valuable benefits to accrue from his skill, business or employment, will not be enforced." *Boggs v. Friend*, 87 S.E. 873, 875 (W. Va. 1916). In light of the state's strong public policy against such covenants, West Virginia courts must "approach restrictive covenants with grave reservations, and take a strict view of them on first impression." *Reddy v. Cmty. Health Found. of Man*, 298 S.E.2d 906, 915 (W. Va. 1982).

The first step in this analysis requires a determination of whether the covenant is "reasonable on its face." *Id.* If a covenant is facially unreasonable, "then it is utterly void and unenforceable." *Id.* The reasonableness determination is fact dependent and "is not an inquiry that can be pursued in pure and abstract legal terms." *Id.* at 912. Nevertheless, it can be summarized as an analysis into whether the covenant "(1) is no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Id.* at 911.

7

The Supreme Court of Appeals of West Virginia has previously found 30-mile geographic restrictions to be reasonable. *See* J.A. 282. But in every instance, the industry was one involving licensed professionals whose businesses draw their customers from their geographical surroundings. *See Weaver v. Ritchie*, 478 S.E.2d 363 (W. Va. 1996) (optometrist); *Gant v. Hygeia Facilities Found., Inc.*, 384 S.E.2d 842 (W. Va. 1989) (medical practice); *Reddy*, 298 S.E.2d at 909 (medical practice).

In stark contrast to the professional medical practices at issue in those cases, telemarketers can place calls anywhere in the world, and do not depend upon their geographical surroundings for patronage. In further contrast, the covenants enforced in *Gant* and *Reddy* were intended to protect local organizations endeavoring to bring quality medical care to underserved regions of West Virginia. Appellants' goals serve no such eleemosynary purpose.

The district court analogized telemarketing to an online store which "can sell products to customers across the country, no matter the store's physical office." J.A. 283. The Court recognized that there could be "some extraneous reason as to why a certain office location is advantageous to an industry." But the trial judge, after considering the facts and evidence presented to him at the injunction hearing, "d[id] not find any such reason to be present for JAK." *Id.* (emphasis added). Based upon this straightforward factual conclusion, the district court observed that

8

"geographical restrictions over a discrete territory lose meaning and *raison d'être* where the reach of the business is in no way restricted by geography." *Id.* at 286.

Faced with the trial court's candid assessment of the facts, the Appellants assert that the telemarketing industry depends upon its geographical surroundings not for customers, but for employees. To that end, Appellants propose that paragraph 8.a. be construed so as to restrict recruitment of the local labor pool. This assertion falls wide of the mark, on both the facts and the law.

Factually, the Appellants offered very limited evidence concerning recruitment from among the general public, and did not emphasize the issue in the proceedings below. What's more, as the district court aptly observed, "[b]y its plain language, [paragraph 8.a.] does not concern employee recruitment activities." *Id.* The trial court's observation must be viewed in context with the other evidence, i.e., other provisions of the employment contract specifically address poaching of both employees and customers, demonstrating that the employer was aware and perfectly capable of drafting provisions specific to different types of competition.

And legally, Appellants support their novel construction solely by reference to non-controlling authorities. *See* Appellants Br. at 14–18. The district court considered these same authorities, and doubted that West Virginia would follow them. *See* J.A. 285–86. What's more, not one of the Appellants' out-of-state cases

9

involved an employee who had stipulated and agreed to be bound by covenants restricting the use of trade secrets, or the poaching of customers and employees. Appellants cannot point to a single West Virginia authority which justifies the broad enforcement that they are now seeking in this appeal.

For these reasons, the trial court was correct and must be affirmed. But even if the contract mentioned recruiting, Appellants' construction of paragraph 8.a. represents an unprecedented expansion of restrictive covenants which finds no support under West Virginia law.

### b. JAK has no legitimate protectable interest in restricting recruitment

A restrictive covenant in an employment contract will only be enforced where it seeks to prevent "unfair" competition. *Reddy v. Cmty. Health Found. of Man*, 298 S.E.2d 906, 912 (W. Va. 1982). "'Unfair' in this regard means simply that the competition into which the employee enters has been made possible by an asset provided by the employer." *Id*. The assets traditionally subject to such covenants are "(1) special information imparted to the employee; (2) good will of customers to whom the employee has been exposed in the performance of his tasks; and, (3) the skills the employee has acquired on the job."

In this case, the competition which JAK believes to be "unfair" largely consists of the following:



J.A. 88.  Two signs, one beside the other, offering competitive wages for similar work.  Appellants have made no showing that this competition makes use of any specialized information, good will of customers, or unique skills.  As a matter of law, this competition is not "unfair" and is not the sort of work which may properly be restricted by way of a restrictive covenant.

Mr. Bayer has agreed to be bound by the restrictions on confidential information and trade secrets.  He has agreed not to poach customers or employees.  By virtue of these agreements, all of JAK's legitimate business interests are protected.  *See also* J.A. 286 ("JAK certainly has valid and significant interests at

11

stake, such as the retention of its current employees and its confidential information. However, a geographical restriction does not serve to protect them. These interests are protected by other covenants within the Employment Contract, which covenants Mr. Bayer is enjoined from violating.").

In short, the district court correctly concluded that the restrictive covenant was unreasonable on its face, and did not clearly err in concluding that paragraph 8.a. "does not concern recruitment activities." J.A. 284. But even if the district court clearly erred in its reading of the covenant, other provisions remain in place which fully protect the Appellants' business interests. Their effort to restrict employee recruitment represents a novel and unsupportable expansion of West Virginia law with respect to restrictive covenants. For these reasons, the Opinion of the district court must be affirmed. *See Blum v. Bacon*, 457 U.S. 132, 138 n.5 (1982) (appellate court may affirm based on any sufficient reason that is apparent on the record).

## II.    Appellants' claim for injunctive relief is not supported by the record

Prior to any injunction, a plaintiff must demonstrate "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter v. Nat'l Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (internal quotation marks omitted), *vacated on other grounds*, 559 U.S. 1089 (2010). Injunctive relief is "an extraordinary remedy." *Id.* at 345.

The district court concluded that Appellants failed to satisfy the first prong of the *Winter* standard, and therefore proceeded no further. Therefore, in the event that this Court accepts Appellants' interpretation of the restrictive covenant, and concludes that the district court abused its discretion, then the case must be remanded in order for the district court – which heard the evidence in support of Appellants' request for an injunction – to determine in the first instance whether the *Winter* standard has been met. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 696 (4th Cir. 1994) (vacating denial of preliminary injunction, remanding for development of evidence concerning availability of injunctive relief).[4]

###     a.     Appellants are not likely to succeed on the merits

Assuming that this Court adopts Appellants' position in toto, the existing record is insufficient even for a finding in their favor with respect to the first prong

---

[4] Alternatively, this Court would be well justified in certifying a question to the West Virginia Supreme Court of Appeals in order to determine the legitimacy, under West Virginia law, of the proposed use of a restrictive covenant to prevent the recruitment of employees from the general public. *See* W. Va. Code § 51-1A *et seq*.

of the *Winter* standard.   This is because West Virginia requires the following inquiry prior to enforcement of a restrictive covenant by way of injunctive relief:

> The approved procedure for reviewing a covenant not to compete, briefly summarized, thus involves three steps: (1) The court must determine that the covenant is reasonable, and is being used reasonably by the employer. If not, the covenant is set aside. If the covenant is inherently reasonable the inquiry continues. (2) The employer must show, under the circumstances, what legitimate interests of his are implicated. When these are established, the reasonable covenant is presumptively enforceable in its entirety. (3) The employee is then given the chance to rebut the presumptive enforceability of the covenant by showing either that he has no company trade assets to abuse, or that the assets made available to him properly belong to him, or that the interests asserted by the employer may be protected by a partial enforcement of the covenant. If the employee prevails in this latter regard then the covenant may be tailored by the court to comport with the equities of the case.

*Reddy*, 171 W. Va. at 380, 298 S.E.2d at 917 (remanding for further proceedings). As explained *supra* at part I.b, the Appellants will be unable to demonstrate what "legitimate interests" are implicated by a restriction on recruiting from the general public. *Id*. Moreover, Mr. Bayer must be given an opportunity to demonstrate that his current work does not implicate any protectable interest of the Appellants.

### b.    Appellants cannot demonstrate irreparable harm

Mr. Bayer has already agreed to be bound by the covenants restricting the use of trade secrets and the poaching of customers or employees.  Those covenants are not at issue in this appeal.  The sole remaining issue is whether Mr. Bayer may continue his day-to-day work managing a telemarketing call center in Athens,

14

Ohio.  The only evidence on this point came in the form of vague, unspecified testimony from John A. Keller, the owner of both Appellant corporations.  *See Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 120 (4th Cir. 1993) (affirming finding that "highly speculative and largely economic injuries did not constitute irreparable harm.").   Given its threshold finding as to the unenforceability of the restrictive covenant, the district court had no occasion to consider irreparable harm, and must be given the opportunity to address the issue in the first instance.

### c.    The balance of equities favors affirmance or – at a minimum – remand

Appellants invoke "potential harm," via "loss of goodwill with its customers and employees."  Appellants Br., at 25.  But Mr. Bayer has agreed to be bound, and this appeal does not involve, the covenants which restrict solicitation of customers or current employees.  The speculative harm therefore relates only to provisions by which Mr. Bayer has already agreed to be bound.  By contrast, the Appellants ask this Court to directly award injunctive relief which would require Mr. Bayer to uproot his family or to abandon the industry to which he has devoted his adult working life.

The Appellants have failed to develop evidence pertaining to the contractual provision actually at issue, providing further justification for a summary affirmance.  Alternatively, should this Court deem the disputed non-compete to be

reasonable and enforceable, then the lack of evidence on this point justifies a remand for further development of the record in the district court.

### d.    The public interest does not support an injunction

As explained above, Mr. Bayer has agreed and stipulated to be bound by contractual provisions which provide the Appellants with all of the protections to which they are entitled under West Virginia law.   The additional requested protection, which is based on recruiting employees from the general public, has never been enforced in West Virginia, would result in nothing more than wage suppression, and is manifestly not supported by the public interest.

<u>CONCLUSION</u>

The district court correctly concluded that a thirty-mile restrictive covenant is unreasonable and unenforceable for the telemarketing industry, which does not depend upon its geographic surroundings in order to attract customers.  What's more, all of the Appellants' legally protectable interests are already guarded by the parties' agreement with respect to prohibitions on the use of trade secrets or customer information, and poaching current or former employees.  The relief requested by the Appellants, grounded in a prohibition on recruiting employees from the general public, constitutes a novel use of restrictive covenants which is not supported by West Virginia law.  Accordingly, the district court's decision must be affirmed.

16

Alternatively, should the Court adopt Appellants' interpretation of the restrictive covenant, the proper remedy is a remand so that the district court may assess the remaining *Winter* factors in the first instance.

## STATEMENT REGARDING ORAL ARGUMENT

In light of the trial court's thorough and accurate analysis, Mr. Bayer submits that oral argument would not aid in the resolution of this appeal, and that the case should be summarily affirmed.

Respectfully Submitted,

/s/ Michael B. Hissam
Michael B. Hissam
Isaac R. Forman
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
mhissam@baileyglasser.com
iforman@baileyglasser.com

*Counsel for Appellee*

17

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>3,713</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated: June 9, 2015              <u>/s/ Michael B. Hissam</u>
                                 Michael B. Hissam

                                 *Counsel for Appellee*

<u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on June 9, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all the following registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219